■ In the Matter of the Claim of DAVID SALZMAN, Respondent, v. SERVICE SIGN ERECTORS, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.—Appeal by the employer and its insurance carrier from a decision of the Workmen's Compensation Board filed May 27, 1970 as amended December 1, 1970. There is substantial medical evidence in the record to establish that as a result of the particular motions involved in the claimant's employment, there was repeated stress in the area of his elbows — a distinctive feature of claimant's job — which caused osteoarthritic changes and which changes caused the ulnar nerve in both elbows to become trapped or affixed at that

location with the result that the continuing use of his arms precipitated a disability in the nature of an ulnar nerve neuropathy. The claimant underwent surgery to remove the numbness in his hands and other symptoms resulting from the ulnar nerve trapping. The appellants offered medical testimony to the effect that the disability was related solely to arthritis in the claimant's spine and that the arthritis in and about his elbows was unrelated to his occupation, but the board was not required to accept this testimony. The issue on this appeal is whether, based on the present record, a disability in the nature of ulnar nerve neuropathy constitutes an occupational disease. Claimant's doctor, Rubinowitz, testified that the claimant's employment involved such motion of his arms and elbows as to directly cause the arthritis and the osteoarthritic changes in the claimant's elbows which in turn resulted in the claimant's disability from an ulnar nerve neuropathy. He observed: "The patient's pattern of neurological loss fits a bilateral ulnar nerve lesion. By this I mean, his pattern of atrophy, weakness and sensory loss in his hand, the hospital work-up, included nerve conduction types and electromyographic studies which pinpointed this bilateral ulnar neuropathy, secondary to disease at the level of the elbows. In addition there was evidence of osteoarthritic changes at both elbows. Now, this sort of total pattern generally can be considered as secondary to chronic trauma at the elbows. By trauma, not meaning someone hitting their elbows, but a great deal of use of the joints. The patient's work, as he described to me, involves tasks for which he would use his motions at the elbows to a much greater degree than someone with a different sort of work." Dr. Post, testifying on behalf of the claimant, stated: "This patient has been employed in an occupation over many years through which he does heavy work and extreme and constant motion related to his upper extremities particularly, and the arthritis that has developed is secondary to constant use, the ulnar nerve neuropathy that has developed is secondary to the arthritis." The word "secondary" when applied to a disease means "One following a previous disease". (See Taber's Cyclopedic Medical Dictionary [7th ed.], p. S-25.) The doctor on cross-examination when asked if the patient might have contracted the nerve condition without arthritis stated that he "would have". Dr. Beasley, testifying for the claimant, in answer to a question stated: "In the predisposing circumstances, the continuous type of work certainly results in a stretch injury manifested by the type of neuropathy, you see." This testimony seems to fit within the framework of what we said in *Matter of Benware* v. *Benware Creamery* (22 A D 2d 968, 969, affd. 16 N Y 2d 966): "While Raynaud's disease apparently affects only persons with a predisposition toward this particular condition, this is analogous to many infirmities the entire science of which are presently unknown. Other symptomatic diseases have frequently been held occupational in nature." The present record lends support to a finding of osteoarthritis in the elbows. The board, however, found the disability was due to the ulnar nerve neuropathy and the record sustains such a finding. Whether the nerve disease was primary or secondary, the continuous type of work resulted in a stretch injury manifested by this type of neuropathy (a disease of the nerves) which caused the claimant's disability. Decision affirmed, with costs to the Workmen's Compensation Board. Herlihy, P. J., Staley, Jr., Greenblott and Cooke, JJ., concur. Reynolds, J., concurs in the result, in the following memorandum: Although I cannot agree with the majority memorandum, or the application of the cases cited therein, I concur in the result.